# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

LEE OLIVER          :

v.                  :          Civil No. CCB-18-323

DEPARTMENT OF PUBLIC SAFETY  :
AND CORRECTIONAL SERVICES, *et al.*  :

## MEMORANDUM OPINION

At issue here is the plaintiff Lee Oliver's motion for leave to amend his complaint, as well as related motions to strike and to dismiss his original complaint. Because his claims are futile, even as delineated in his proposed amended complaint, Mr. Oliver's motion for leave to amend his complaint will be denied and this case will be dismissed.

## BACKGROUND

In 1995, a jury convicted Mr. Oliver of first and second degree rape in the Circuit Court for Prince George's County. (Am. Compl. ¶ 26.) His conviction was overturned on appeal. (Am. Compl. ¶ 27.) In 1998, Mr. Oliver entered an *Alford* plea to rape in the second degree and received a 5-year sentence. (Am. Compl. ¶ 28.) In July 1999, he was released from custody and simultaneously was required to register as a sex offender. (Am. Compl. ¶ 29-30.) He objected to the sex offender registration requirement. (Am. Compl. ¶ 29.) From July 1999 until May 2015, Mr. Oliver was required to re-register as a sex offender, at regular intervals, with state and local authorities, and remained listed on the Maryland Sex Offender Registry (hereafter, "MSOR"). (Am. Compl. ¶ 26-70.) In the interim, the specific requirements and purported duration of his

registration changed numerous times with various retroactive amendments to the Maryland Sex Offender Registration Act (hereafter "the Act").

The Act was first promulgated on October 1, 1995, and applied only to Child Sexual Offenders. (Am. Compl. ¶ 73-74.) On October 1, 1997, an amendment to the Act broadened the Act's applicability to include "Sexually Violent Offender[s]" and "Sexually Violent Predator[s]." (Am. Compl. ¶ 79.) Following Mr. Oliver's release and registration in 1999, a new amendment to the Act required individuals who, like Mr. Oliver, were convicted under Article 27 § 464A to register for life. (ECF 10-1 at p. 4.) In 2010, additional amendments instituted a tiered structure whereby Mr. Oliver, as a "tier III sex offender," was required to register in person every three months for life. (*Id.*)

In 2013, the Maryland Court of Appeals concluded that the Act's retroactive registration requirement violated the ex post facto prohibition contained in Article 17 of the Maryland Declaration of Rights. *Doe v. Dep't of Pub. Safety & Corr. Servs.*, 430 Md. 535, 568 (2013) ("*Doe I*"). The decision was based purely on Maryland law, and the court noted its own divergence from the narrower prohibitions dictated by the federal constitution's Ex Post Facto Clause. In 2014, the Maryland Court of Appeals held further that, despite registration obligations imposed by 42 U.S.C. § 16901 *et seq.*, the federal Sex Offender Registration and Notification Act ("SORNA"), Maryland courts have the ability to instruct the State to remove a registrant's information when its inclusion would violate the state constitution under the prescriptions of *Doe I. Dep't of Pub. Safety & Corr. Servs. v. Doe*, 439 Md. 201, 207 (2014) ("*Doe II*"). On April 15, 2015, in the wake of *Doe II*, Mr. Oliver filed a complaint for declaratory judgment. (*See* Am. Mem. P. & A. Supp. Def. Montgomery Co., MD's Mot. Dismiss Pl.'s Compl., ECF 9-1 at p. 10.) MSOR staff reviewed the facts and timing of Mr. Oliver's case and sentence, and

determined that he was not required to register as a sex offender in Maryland. (Am. Compl. ¶ 71; State Defs' Mot. to Dismiss, ECF 10-1 at p. 5.) He was delisted on or about May 28, 2015. (Am. Compl. ¶ 71.)

On February 1, 2018, Mr. Oliver filed suit against the Department of Public Safety and Correctional Services, the Sexual Offender Advisory Board, Montgomery County, and various employees working for these agencies, alleging that his rights under the United States Constitution, the Maryland Declaration of Rights, and Maryland common law were violated by the initial and continued requirement that he register as a sex offender. (Compl., ECF 1.) Both County and State defendants filed motions to dismiss—on March 26, 2018, and on April 9, 2018, respectively. (ECF 8; ECF 10.) Mr. Oliver did not respond to either motion to dismiss. On May 8, 2018, Mr. Oliver instead filed an amended complaint, adding as defendants four former Secretaries of the Department and three members of the Montgomery Police Department. (Am. Compl., ECF 12.) In this amended complaint, Mr. Oliver abandoned his claims against the Department and the Sexual Offender Advisory Board, converted his claims against employees to individual capacity claims, but maintained his claims against Montgomery County. *Id.* Additionally, he added three claims brought under § 1983. *Id.* In response, both the State and County defendants filed motions to strike the amended complaint. (ECF 13; ECF 14.) Mr. Oliver again filed no response. On June 29, 2018, Mr. Oliver filed a Motion for Leave to Amend. (ECF 15.) Both defendants filed responses opposing the plaintiff's motion. (ECF 16; ECF 17.) Mr. Oliver replied, (ECF 19), and the issues are now ready for ruling.

## ANALYSIS

### I. Standard of Review

Rule 15 of the Federal Rules of Civil Procedure governs a plaintiff's prerogative to amend her complaint. Plaintiffs can amend as a matter of course if the revisions are offered within 21 days of service.[1] Fed.R.Civ.P. 15(a)(1)(A). They can amend with the opposing party's written consent. Fed.R.Civ.P. 15(a)(2). Third, and relevant here, a plaintiff also may amend with the court's leave. *Id.* The rule specifies that "[t]he court should freely give leave when justice so requires." *Id.* The Fourth Circuit has noted that "[t]his liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). Granting leave to amend, therefore, is the default under Rule 15. In *Laber*, the Fourth Circuit, sitting *en banc*, explained: "[w]e have interpreted Rule 15(a) to provide that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Id.* (internal quotation marks omitted). Prejudice is the weightiest factor, the absence thereof, "though not alone determinative, will normally warrant granting leave to amend." *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980). But a movant's undue delay or dilatory motive may also be considered. *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 553 (2010). Here, the defendants primarily argue that the proposed amendments would be futile.

"Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards: A district court may deny leave if amending the

---

[1] Additionally, "if a pleading is one to which a responsive pleading is required, [a party may amend its pleading within] 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed.R.Civ.P. 15(a)(1)(B). Here, Mr. Oliver's amended complaint was filed outside the 21-day window.

4

complaint would be futile—that is, if the proposed amended complaint fails to satisfy the requirements of the federal rules." *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (internal quotation marks omitted). An amendment is futile when the proposed amended complaint does not state a claim under Fed.R.Civ.P. 12(b)(6). "Where the statute of limitations bars a cause of action, amendment may be futile and therefore can be denied." *United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000).

## II. Discussion

The defendants in this case assert that granting Mr. Oliver leave to amend would be a futile exercise because his complaint, as amended, fails to state a viable claim. Specifically, they argue, as a threshold matter, that his claims are barred by the applicable statute of limitations and are thus untimely. Second, they contend that he fails to plead facts sufficient to state a claim under Rule 12(b)(6). Third, they put forth affirmative defenses—including qualified immunity—contending that even if the complaint contains facts sufficient to support a claim, they are immunized from suit. Taken together, the second and third grounds demonstrate the proposed amended complaint's futility.

### A. Time Bar

The court is ill-equipped to rule on the plaintiff's continuing violation theory without more facts, and, ultimately, there is no need to do so. The timing dispute here is over the date of accrual. The defendants argue that all claims brought by Mr. Oliver are subject to a three-year deadline. (ECF 10-1 at pp. 6-7; ECF 9-1 at pp. 19-20.) He does not dispute this contention; rather, he asserts that the continuing violation exception or the doctrine of equitable tolling salvage his belated filing. (ECF 19 at p. 12.) Mr. Oliver was first required to register as a sex

offender in July 1999. (Am. Compl. ¶¶ 29-30.) But because he was sentenced in 1995, when the Maryland Sex Offender Registration Act only applied to "Child Sexual Offender[s]," and the victim was over 18 years of age, he objected. (Am. Compl. ¶ 74.) Mr. Oliver was required to re-register, at regular intervals, through May 5, 2015. (Am. Compl. ¶ 99.) On May 23, 2015, MSOR staff determined that Mr. Oliver was no longer required to register. (Am. Compl. ¶ 100.) On May 28, 2015, he was informed that he was no longer required to remain registered.[2] (Am. Compl. ¶ 71.) This case was filed on February 1, 2018. (*See* Compl., ECF 1.)

There are not, in the record at present, "all facts necessary" to dispose of the plaintiff's continuing violation theory. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). Denying the plaintiff leave to amend, therefore, would not be appropriate on statute of limitations grounds. "A continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Nat'l Advert. Co. v. City of Raleigh*, 947 F.2d 1158, 1166 (4th Cir. 1991). The Circuit has "found a continuing violation where regulations continued to be applied to persons within the statutory limitations period . . . but not where any harm to the plaintiff stemmed only from the initial regulatory prohibition." *Id.* at 1167. The same rule applies under Maryland law. *See Bacon v. Arey*, 203 Md. App. 606, 655 (2012) (explaining that "[c]ontinuing violations that qualify under this theory are continuing unlawful acts, for example, a monthly over-charge of rent, not merely the continuing effects of a single earlier act").

Here, the alleged injury occurred in 1999 when the plaintiff initially was required to register—but it is also alleged to have occurred on the repeated occasions when the defendants made affirmative representations through May 2015, maintaining that Mr. Oliver was required to

---

[2] The plaintiff provides inconsistent dates. He separately asserts that notice was received on August 3, 2015. (Am. Compl. ¶ 3.)

re-register—representations that persisted despite multiple changes to the Act, (Am. Compl. ¶¶ 73-89), and to its retroactivity requirements. *Doe I*, 430 Md. at 545-46. Thus, the defendants' contention that plaintiff knew the facts necessary to pursue his claim on July 22, 1999, (ECF 17 at p. 2), is not necessarily true. Not only were the Act's alterations likely to interfere with the plaintiff's ability to know if and when to sue, but it also was unclear, during the years the plaintiff was registered, whether his registration was even unlawful. While he objected to registration, it was not until *Doe I* that Maryland's sex offender registration law was held to violate Article 17 of the Maryland Declaration of Rights, and it has never been held to violate the federal constitution's ex post facto prohibition. *See Doe I*, 430 Md. at 547. Because of the iterative nature of the alleged violation and the numerous changes to the act, the alleged injury is more like the monthly over-charge of rent than the lingering effects of a bygone constitutional violation. And therefore, because facts sufficient to support a continuing violation theory could develop in the course of discovery, the plaintiff's motion for leave to amend is not futile on statute of limitations grounds. *See Goodman*, 494 F.3d at 464.

B. <u>Failure to State a Claim & Affirmative Immunity Defenses</u>

In their motions opposing leave to amend, the defendants assert that the plaintiff's complaint, even as amended, fails to state a claim upon which relief can be granted. They are correct. While some claims falter on Rule 12(b)(6) grounds, others fail because the defendants are entitled to qualified immunity.[3] The plaintiff's claims can be divided among those brought under § 1983, those arising under the Maryland Declaration of Rights, and a single claim for intentional infliction of emotional distress brought under Maryland common law.

---

[3] As explained below, the state law claims against Montgomery County fail for the additional reason that the plaintiff failed to comply with the Local Government Tort Claims Act.

7

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). And the plaintiff typically must do so by relying solely on facts asserted within the four corners of his complaint. *Zak v. Chelsea Therapeutics Intern.*, Ltd., 780 F.3d 597, 606-07 (4th Cir. 2015). While the inquiry is focused on the sufficiency of the complaint, in "relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, [an affirmative] defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman*, 494 F.3d at 464.

    *i.*    *Constitutional Claims*

    **a. Sufficiency of pleaded facts: §1983 Claims**

Counts I, II, IV, V, VII, VIII, and IX allege constitutional violations brought under § 1983. (*See* Pl's Reply, ECF 19 at p. 5.) "To state a claim under § 1983, a plaintiff must allege [1] the violation of a right secured by the Constitution and laws of the United States, and [2] must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, while the second prong is not subject to dispute, the defendants assert that there are not facts in the complaint sufficient to show a predicate

8

constitutional violation. The proposed amended complaint impliedly alleges that the defendants' actions violated the Ex Post Facto Clause of the United States Constitution, in addition to explicitly pleading violations of the Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution. (ECF 19 at p. 5.) The plaintiff expressly abandons his arguments under the Fifth and Ninth Amendments. (ECF 19 at p. 8.) The remaining alleged constitutional violations are considered in turn.

Mr. Oliver objects to the requirement that he register in 1999 for a crime committed in 1995, pursuant to a 1997 revision to the Act rendering him eligible for registration. While not framed specifically as a federal Ex Post Facto Clause violation—indeed the term "ex post facto" does not appear in the proposed amended complaint—this is the central grievance from which the balance of his constitutional claims derive. (*See* Am. Compl. ¶¶ 3, 103.) If the Maryland Sex Offender Registration Act does violate the federal constitution's Ex Post Facto Clause—by no means a foregone conclusion—that argument may have some merit. But if it does not, then it is not clear how the plaintiff can maintain the contention that he was never required to register as a sex offender. The facts in the complaint supporting the conclusion that the Act is unconstitutional on ex post facto grounds are meager, and yet, even assuming they are sufficient, they yield the definitive conclusion that, if there was a violation of the plaintiff's constitutional rights, no such right was clearly established at the time of the alleged violation.

The Maryland Court of Appeals concluded that the Maryland Sex Offender Registration Act's retroactive registration requirement violated the ex post facto prohibition contained in Article 17 of the Maryland Declaration of Rights. *Doe I*, 430 Md. at 568. But while the *Doe I* Court held that Maryland's Sex Offender Law violates Maryland law's own ex post facto provision, it expressly withheld judgment as to any federal constitutional violation. *Doe I*, 430

Md. at 547 (stating "[w]e conclude . . . that requiring Petitioner to register as a sex offender violates Article 17's prohibition against *ex post facto* laws; thus, we need not, and do not, address whether requiring Petitioner to register violates the prohibition against *ex post facto* laws under Article 1 of the federal Constitution"). Critically, the court noted that it was electing an approach to ex post facto analysis "rejected" by the Supreme Court. *Doe I*, 430 Md. at 551. It declared "[a]lthough the Supreme Court appears to have narrowed the scope of the federal Constitution's protection against *ex post facto* laws, we elect to follow the principle of *stare decisis* and continue to interpret Article 17 as offering broader protection." *Doe I*, 430 Md. at 552. Under Maryland precedent, the ex post facto prohibition is governed chiefly by the "disadvantage standard"—the broad proposition that a retroactive law, when applied, may not "disadvantage[] the offender." *Id.* at 561.

The federal rule is somewhat different. In *Smith v. Doe*, the Supreme Court considered whether the Alaska sex offender registration program violated the Ex Post Facto Clause. 538 U.S. 84, 92 (2003). Setting out the applicable test, the Court explained: "We must ascertain whether the legislature meant the statute to establish civil proceedings. . . . If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil." *Id.* (internal quotation marks omitted). Furthermore, it noted, "[b]ecause we ordinarily defer to the legislature's stated intent . . . only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.*; *see also United States v. Gould*, 526 F. Supp. 2d 538, 548 (D. Md. 2007), *aff'd*, 568 F.3d 459 (4th Cir. 2009). In *Smith*, the Court conducted a thorough investigation into

the legislative objectives behind the Alaska law, looking to its structure and history to ascertain legislative intent. 538 U.S. at 93-96. Reaching the second step of the inquiry, the Court also applied the *Mendoza-Martinez* factors, imported from its double-jeopardy jurisprudence, to determine the punitive effects, if any, of the Act in question. *Id.* 97-104. The Court concluded that "Alaska's intention to establish a civil regulatory scheme" was not negated, "[t]he Act [was] nonpunitive[,]" and that therefore "its retroactive application does not violate the *Ex Post Facto* Clause." *Id.* at 105-06.

*Smith*, by itself, does not preclude the plaintiff's claims. While the Alaska and Maryland sex offender registration laws have some similarities, the threshold question within the ex post facto analytical framework prescribed by Justice Kennedy in *Smith* concerns the legislature's intent. Thus, to decide the issue, the court would have to sift the Maryland Sex Offender Registration Act and its various amendments through the test announced in *Smith*. While the facts necessary to conduct this analysis are conspicuously missing from the complaint, one could defensibly conclude that Mr. Oliver describes his own retroactive requirement to register with sufficient detail to provisionally shepherd this claim past Rule 12(b)(6). Indeed, it is conceivable that evidence of the Maryland legislature's punitive intent might arise in the course of litigation, as might reason to view the Act as so punitive in purpose or effect as to negate the State's [regulatory] intention. *Smith*, 538 U.S. at 92. And yet, as explored below, by this very same token (the novelty of the required constitutional analysis), the individual defendants are entitled to qualified immunity on any §1983 cause of action based on a predicate violation of the Ex Post Facto Clause.

A survey of the other constitutional violations alleged by the plaintiff confirms that his only potentially viable claims hinge on constitutional questions of first impression. The plaintiff's

Eighth Amendment claims, for example, rise and fall with his Ex Post Facto Clause claim. The plaintiff alleges that his ongoing inclusion in the Maryland Sex Offender Registry and the requirement that he re-register violate the Eighth Amendment's ban on cruel and unusual punishment. (Am. Compl. ¶ 129.) The amendment prohibits "not only barbaric punishments, but also sentences that are disproportionate to the crime committed." *Solem v. Helm*, 463 U.S. 277, 284 (1983). In *United States v. Under Seal*, the Fourth Circuit considered whether the plaintiff's requirement to register with the federal Sex Offender Registration and Notification Act (SORNA) violated the Eighth Amendment. 709 F.3d 257, 263 (4th Cir. 2013). The Circuit explained: "To determine whether the application of SORNA to Appellant has a punitive effect, we utilize the two-part test set forth by the Supreme Court in *Smith v. Doe*[.]" *Id.* And thus, as in the Ex Post Facto Clause context, the Act in question must have a punitive intent or effect for an Eighth Amendment claim to succeed. The similarity of MSOR's retroactivity requirements to those of SORNA and Alaska's sex offender registry, upheld by the Fourth Circuit and the Supreme Court respectively, lead to the likely conclusion that Maryland's law does not run afoul of the Eighth Amendment or the federal Ex Post Facto Clause. *See Under Seal*, 709 F.3d at 263-64; *Smith*, 538 U.S. at 105-06. But, as noted above, the issue has not been conclusively decided.

The plaintiff next alleges that the defendants violated his Fourth Amendment rights by "seiz[ing] his person on each of the at least 26 times that he was required to appear before them to register." (ECF 19 at p. 6.) The proposed amended complaint is devoid of the facts needed to make out an unlawful seizure claim. "[N]ot all personal intercourse between [government officials] and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Florida v. Bostick*, 501 U.S. 429, 434 (1991). Nowhere

12

in his complaint does the plaintiff even allege the use of force or any restraining show of authority by the defendants. The plaintiff's Fourth Amendment claim is therefore futile because he fails to plead facts sufficient to survive a motion to dismiss.

The final pleaded predicate constitutional violation is a due process claim under the Fourteenth Amendment. There is a right under the Fourteenth Amendment to procedural due process when a person's liberty interest in their reputation is impugned by the state. *See Bd. of Regents v. Roth,* 408 U.S. 564, 573 & n.12 (1972). But it is axiomatic that [t]here can be no deprivation of liberty [under a procedural due process theory] unless the stigmatizing charges at issue are false. *Ridpath v. Bd. of Governors Marshall Univ.,* 447 F.3d 292, 312 (4th Cir. 2006); *see also Stone v. Univ. of Maryland Med. Sys. Corp.,* 855 F.2d 167, 172 n.5 (4th Cir. 1988). Here, the plaintiff's sole argument under the Due Process Clause is that he was mischaracterized as a sex offender. (ECF 19 at p. 6-7.) And yet the repeated changes to the Act and its changing status under the Maryland constitution make it unclear when the fact that Mr. Oliver was required to register as a sex offender became false. That said, even if it was false from the very beginning, he was afforded the requisite procedural safeguards because the requirement that he register hinged solely on the fact of Mr. Oliver's conviction. *See Connecticut Dep't of Pub. Safety v. Doe,* 538 U.S. 1, 7 (2003) (rejecting a procedural due process challenge to sex offender registration because, in Connecticut, "the law's requirements turn on an offender's conviction alone—a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest"). Any concomitant substantive due process issue would likely meet a similar fate. Courts to have considered the issue conclude that sex offender registries do not implicate fundamental rights. *See, e.g., Doe v. Moore,* 410 F.3d 1337, 1345 (11th Cir. 2005) (explaining that "[t]hough the Supreme Court has not addressed whether substantive due process invalidates

13

sex offender registration statutes, we can find no history or tradition that would elevate the issue . . . to a fundamental right."). The plaintiff's due process claims therefore, like his Ex Post Facto Clause and Eighth Amendment claims, depend on an unlikely, and wholly hypothetical, development in the law. But even if they might be sufficient to survive a motion to dismiss for failure to state a plausible claim, the claims would fail because the defendants are entitled to immunity.[4]

### b. Immunity: §1983 Claims

The only potential predicate constitutional violations that may clear the Rule 12(b)(6) hurdle are simultaneously so novel as to preclude liability under the qualified immunity doctrine. Nine of the ten defendants named in the proposed amended complaint are individual government employees, namely Secretaries of Public Safety and Correctional Services dating back to Mr. Oliver's initial inclusion in the MSOR, and Montgomery County police officers working for the Sex Offender Registry Unit who met with Mr. Oliver at his various registration appearances.

Qualified immunity is an affirmative defense to liability under 42 U.S.C. § 1983. *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). It is appropriate for a court to consider defendants' claims to qualified immunity at the motion to dismiss stage. *Jenkins v. Medford*, 119 F.3d 1156, 1159 (4th Cir. 1997). Qualified immunity shields government officials from liability for civil damages as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. "Qualified immunity balances two important interests—the need to hold public officials accountable when they

---

[4] Mr. Oliver's § 1983 claim against Montgomery County (Count VII) is also futile as amended because it fails to state a claim upon which relief can be granted. *See Twombly*, 550 U.S. at 570. He pleads no facts with particularity pertaining to actions taken by Montgomery County. Mr. Oliver does not plead the facts needed to sustain a *Monell* claim, nor does he plead any facts showing that County action, policy, custom, or omission were involved in his alleged constitutional deprivations or sex offender registration in Maryland, generally. *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690-95 (1978).

14

exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Defendants bear the burden of proving their entitlement to qualified immunity. *Danser v. Stansberry*, 772 F.3d 340, 345 (4th Cir. 2014). To prevail on a qualified immunity defense, a government official must demonstrate either (1) that the facts, construed in the plaintiff's favor, do not constitute a violation of the plaintiff's constitutional rights, or (2) that the right infringed upon was not clearly established at the time of the alleged violation. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson*, 555 U.S. at 231-33.

Here, the requisite qualified immunity analysis comes chiefly at the second prong. Given the foregoing discussion of the predicate constitutional violations in the plaintiff's *prima facie* case, there remains a slim possibility that the plaintiff's constitutional rights were, in fact, violated. There is no possibility, by contrast, that the rights allegedly violated were clearly established at the time of the purported violation. Explicating this second prong, the Supreme Court explained that a right is clearly established when "its contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal quotation marks omitted). It further explained that while "this is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "The salient question is whether the state of the law at the time of the events in question gave the officials fair warning that their conduct was unconstitutional." *Ridpath*, 447 F.3d at 313 (internal quotation marks omitted).

The facts of this case present no indication that the defendants had reason to question the constitutionality of their conduct. MSOR officials removed Mr. Oliver from the registry within a year of the Maryland Court of Appeals decision in *Doe II*, despite the fact that he still met the definition of a sex offender under SORNA. This shows only an intent to remain on the right side of a developing area in the law. More importantly, if any constitutional violation occurred in this case, it was not clearly established at the time. Mr. Oliver has neither pleaded nor proffered in his memoranda any facts to show that a reasonable official would know Mr. Oliver's registration violated a constitutional right, any facts to show that pre-existing law demonstrated the unlawfulness of the defendants' action, or any facts to show the defendants had, or should have had, any warning that their conduct was less than in full compliance with the dictates of the constitution. As set forth above, the Supreme Court and the Fourth Circuit have upheld similar retroactive registration requirements. Even assuming the MSOR could be held to be punitive under the test announced in *Smith v. Doe*, knowledge of that fact cannot be imputed to the defendants during the time of Mr. Oliver's registration. Because the plaintiff's right not to be listed in the MSOR was not clearly established at the time the alleged violation occurred, qualified immunity insulates the individual defendants in this case from liability under § 1983.

*ii.    State Law Claims*

In addition to his constitutional claims, Mr. Oliver alleges that the defendants violated his rights under the Maryland Constitution. Specifically, he alleges a deprivation of his rights under Declaration of Rights Article 24, Article 17, and Article 25. The first is brought as a standalone claim. (Count III). The latter two are included within his federal constitutional claims. (Count IV and Count V).

### a. State Defendants

The State defendants are entitled to immunity on the plaintiff's state law claims under Md. Code Ann., Cts. & Jud. Proc. § 5-522(b). As Secretaries of Public Safety and Correctional Services, the State defendants are all state personnel as defined in Md. Code Ann., State Gov't § 12-101. *See* Md. Code Ann., State Gov't § 12-101(a)(3). They are thus "immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of [their] public duties and is made without malice or gross negligence." Md. Code Ann., Cts. & Jud. Proc. § 5-522(b). As the Fourth Circuit has explained,

> Under Maryland law, the malice necessary to defeat immunity under section 5–522 is what is often referred to as 'actual malice'—that is, conduct 'motivated by ill will, by an improper motive, or by an affirmative intent to injure.' *Shoemaker v. Smith*, 353 Md. 143, 725 A.2d 549, 560 (1999). A similarly high threshold must be crossed to establish gross negligence—the defendant must have 'acted with wanton or reckless disregard for the safety of others.' *Boyer v. State*, 323 Md. 558, 594 A.2d 121, 132 (1991); *cf. State v. Albrecht*, 336 Md. 475, 649 A.2d 336, 348 (1994) (defining gross negligence as conduct 'so heedless and incautious as necessarily to be deemed unlawful and wanton, manifesting such a gross departure from what would be the conduct of an ordinarily careful and prudent person under the same circumstances so as to furnish evidence of an indifference to consequences.')

*Young v. City of Mount Ranier*, 238 F.3d 567, 578-79 (4th Cir. 2001). The bar to defeat state law immunity is high.

Here, the plaintiff pleads no facts showing that any of the defendants acted with malice or gross negligence. There are no facts that point toward an improper motive or an affirmative intent to injure. There is simply no allegation of malice in the plaintiff's proposed amended complaint. Similarly, there are no factual allegations in the proposed amended complaint that even approach gross negligence. The defendants' shortcomings here, if any, were a failure to foresee that the MSOR would be held unconstitutional under Maryland law. This falls far short

of the wanton, reckless, or heedless action needed to overcome § 5-522(b) immunity. Because there are insufficient facts within the proposed amended complaint to sustain state law claims against state defendants and because state law immunity applies, granting the plaintiff leave to amend these claims would be futile.

### b. County Defendants

Mr. Oliver's state law claims against Montgomery County are futile because he failed to comply with the Local Government Tort Claims Act (hereafter "LGTCA"). State law constitutional torts are subject to the LGTCA. *Thomas v. City of Annapolis*, 113 Md. App. 440, 457-59 (1997). The LGTCA mandates that a plaintiff seeking unliquidated damages from a local government or its employees must submit administrative notice of this claim within 180 days after the injury, Md. Code Ann., Cts. & Jud. Proc. § 5–304(a). "The notice requirements are intended to apprise a local government of its possible liability at a time when it could conduct its own investigation...sufficient to ascertain the character and extent of the injury and its responsibility in connection with it." *Faulk v. Ewing*, 371 Md. 284, 298-99 (2002) (internal quotation marks omitted). The filing of this notice is a condition precedent to the plaintiff's underlying action for damages, and should be alleged as a substantive element in the complaint in order to state a claim under Maryland law. *Curtis v. Pracht*, 202 F.Supp.2d 406, 414 (D. Md. 2002); *see also Hargrove v. Mayor and City Council of Baltimore*, 146 Md.App. 457, 462-63 (2002). Although the requirement may be met by "substantial compliance," this still "requires some effort to provide the requisite notice and, in fact, it must be provided, albeit not in strict compliance with the statutory provision." *Faulk*, 371 Md. at 299.

Here, the plaintiff flouts the LGTCA requirements in two ways. First, he does not plead compliance with §5-304 as a substantive element of his claims against the county. *Hansen v. City*

*of Laurel*, 420 Md. 670, 684 (2011) (explaining that "at the very least, [Maryland Court of Appeals] precedent seems to require that tort claimants plead affirmatively, albeit generally, this *particular* condition precedent, *i.e.*, the LGTCA notice requirement."). Indeed, there is no mention of the LGTCA in his proposed amended complaint. Second, while Mr. Oliver attaches a letter dated April 6, 2016, from the County defendants purportedly acknowledging notice of his claim, there is no way to ascertain from all the plaintiff's filings whether he adhered to the 180-day deadline. While the timeline Mr. Oliver provides of his removal from the MSOR is inconsistent, *compare* Am. Compl. ¶ 3 (stating that his removal from the registry occurred on August 3, 2015) *with* Am. Compl. ¶ 71 (stating that his removal from the registry occurred on May 28, 2015), the very latest date of any alleged injury is August 3, 2015. The notice period of 180 days would have expired January 30, 2016. The plaintiff should have pled his compliance with the LGTCA in his first complaint; and he should have pled his compliance with the LGTCA in his proposed amended complaint, once the County defendants raised the argument in their motion to dismiss. But he did not. Instead, Mr. Oliver acknowledged the argument for the first time in his Reply to his motion for leave to amend, and even there failed to sufficiently allege compliance with §5-304. The April 6, 2016, letter from the County that is attached to the Reply is too little too late. The plaintiff's state law claims against Montgomery County and its officers would not survive a motion to dismiss, and thus granting the plaintiff leave to amend his state law claims against the County and its officers would be futile.

*iii. Common Law Claims*

The plaintiff's final remaining claim alleges intentional infliction of emotional distress (hereafter "IIED") under Maryland common law. The elements of an IIED claim under Maryland common law are fourfold: "(1) the conduct must be intentional or reckless; (2) the conduct must

19

be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; (4) the emotional distress must be severe." *Harris v. Jones*, 281 Md. 560, 566 (1977).

Here, there are simply no factual allegations pertaining to this cause of action. The claim itself, as delineated in Count VI in the proposed amended complaint, is but a bare and conclusory recitation of the legal elements. For example, there are no factual allegations that any of the defendants' actions, if indeed they were wrongful, were intentionally or recklessly so. There are no factual allegations that the defendants' conduct was outrageous or extreme—a high burden for any plaintiff to meet. Nor are there allegations that Mr. Oliver suffered a severely disabling emotional response. *See Tavakoli-Nouri v. State*, 139 Md. App. 716, 728-29 (2001). Because the facts pleaded are insufficient to defeat a motion to dismiss under Rule 12(b)(6), *see Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009), leave to amend this claim would be futile.

## CONCLUSION

Because, for the reasons stated above, all Mr. Oliver's claims would fail to survive a motion to dismiss, granting him leave to amend would be futile. Therefore, plaintiff's motion for leave to amend will be denied. The unopposed motions to strike the amended complaint filed without leave of court also will be granted. And the defendants' initial motions to dismiss, opposed only by the attempt to file an amended complaint, prevail for the same reasons the amended complaint would be futile. Accordingly, those motions also will be granted.

A separate order follows.

11/28/18
Date

Catherine C. Blake
United States District Judge